1        UNITED STATES JUDICIAL PANEL
                     on
2        MULTIDISTRICT LITIGATION

3                 - - -

4

5                                    )
                                     )
6    IN RE: FYRE FESTIVAL LITIGATION )
                                     )
7                                    )   MDL NO: 2787
                                     )
8                                    )
                                     )
9                                    )
     _____)
10

11

12        REPORTER'S TRANSCRIPT OF PROCEEDINGS

13          THURSDAY, JULY 27, 2017

14          LOS ANGELES, CALIFORNIA

15

16

17

18

19

20

21

22        LAURA MILLER ELIAS, CSR 10019
         FEDERAL OFFICIAL COURT REPORTER
23       350 WEST FIRST STREET, ROOM 4455
          LOS ANGELES, CALIFORNIA 90012
24            PH:  (213)894-0374

25

```
 1   APPEARANCES OF COUNSEL:

 2
     ON BEHALF OF PLAINTIFFS HERLIHY:
 3
 4           LEVI & KORINSKY LLP

 5           BY: ROSEMARY M. RIVAS, ESQ.

 6
 7   ON BEHALF OF PLAINTIFFS PETROZZIELLO:

 8
 9           WILENTZ, GOLDMAN, & SPITZER

10           BY:  ANDREW GROUS, ESQ.

11
12   ON BEHALF OF PLAINTIFFS REEL:

13
14           THE LAW OFFICES OF LEVY & LEVY

15           BY:  CHAD E. LEVY, ESQ.

16
17   ON BEHALF OF PLAINTIFF JUNG:

18           GERAGOS & GERAGOS

19           BY:  BEN MEISELAS, ESQ.

20
21
22
23
24
25
```

UNITED  STATES  DISTRICT  COURT

1

2                              INDEX

3

4      PROCEEDINGS                              PAGE

5

6      ORAL ARGUMENT                              4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    LOS ANGELES, CALIFORNIA; THURSDAY, JULY 27, 2017; 10:20 A.M.
 2                            -  -  -
 3              JUDGE VANCE:  In Re:  Fyre Festival Principal
 4    Litigation.
 5              First up is Ms. Rivas.
 6              MS. RIVAS:  Good morning, Your Honors.
 7              Rosemary Rivas on behalf of the movants and the
 8    plaintiffs, Matthew Herlihy and Anthony Loriello.
 9              I'd like to update the panel with information that
10    has come to light since the briefing that we believe supports
11    consolidation in centralization in the Southern District of
12    New York.
13              First, one of the defendants in the case, William
14    McFarland, was arrested for wire fraud.  Those criminal
15    proceedings will be taking place in the Southern District of
16    New York.
17              JUDGE PROCTOR:  Is that in any way connected to
18    this litigation?
19              MS. RIVAS:  They're based on the same facts,
20    Your Honor.
21              JUDGE VANCE:  Did you sue him?  Is he one of the
22    defendants?
23              MS. RIVAS:  Yes, Your Honor.  He's sued in every
24    one of the suits.
25              JUDGE VANCE:  Is he one of the defendants who's
```

```
 1    been defaulted?
 2              MS. RIVAS:  In my case, the court has not entered a
 3    default because we have to prove up the damages under the
 4    rules.
 5              JUDGE BREYER:  Well, has he answered?
 6              MS. RIVAS:  No, Your Honor.
 7              JUDGE KAPLAN:  Has the clerk filed a Certificate of
 8    Default?
 9              MS. RIVAS:  No, Your Honor.
10              JUDGE KAPLAN:  And why is that?
11              MS. RIVAS:  That's one thing we need to find out.
12    We did file a motion for a default, Your Honor, and we're
13    waiting for that.
14              JUDGE PROCTOR:  Have you moved for entry of default
15    as opposed to default judgment?
16              MS. RIVAS:  I believe in the Southern District of
17    New York because it's a class action, we had to do it the way
18    that we did it which was a motion and --
19              JUDGE KAPLAN:  I beg to differ.
20              MS. RIVAS:  Okay.
21              JUDGE PROCTOR:  We do have an expert here.
22              MS. RIVAS:  Thank you, Your Honor.
23              JUDGE VANCE:  There's been a default in the Florida
24    case, too; right?
25              MS. RIVAS:  My understanding is that's correct,
```

1   Your Honor.

2           JUDGE VANCE:  I mean, how does that affect the

3   litigation and strategy here?  If you end up taking defaults

4   against the main defendants, you don't have to prove

5   liability with a lot of discovery, and the other defendants

6   aren't common to the cases.  So I'm trying to understand why

7   we need an MDL for coordinated pretrial proceedings.

8           MS. RIVAS:  Sure, Your Honor.  One of the

9   defendants who has not appeared, his attorney contacted me,

10  Ms. Stacy Richman.  She contacted me on behalf of Mr. Jeffrey

11  Atkins, and she told me that he is in the process of

12  retaining counsel for the class action cases, and that he

13  will be appearing.

14          I will also note, Your Honors, that there are

15  additional defendants that are likely to be named in the

16  cases.

17          JUDGE VANCE:  Is he one of the Fyre defendants?

18  There's a group of defendants that were -- that put on the

19  program, and there's some promotors; right?  Is he -- the

20  person that you just mentioned, Atkins, is he one of the

21  promotor group or the -- I mean one of the put together of

22  the program group or the ancillary people?

23          MS. RIVAS:  We believe he's a core defendant,

24  Your Honor.

25          JUDGE VANCE:  Okay.

1      MS. RIVAS:  He and Mr. McFarland heavily advertised

2   it, promoted it, and they were involved in the management of

3   Fyre Media.

4      JUDGE VANCE:  And has he been defaulted anywhere?

5      MS. RIVAS:  No.  I believe he has not been served

6   in -- maybe it's -- he's not been served.  I believe he has

7   been defaulted, Your Honor, in Florida; however, his counsel

8   has contacted us in New York that he intends to appear

9   through counsel.

10      Additionally, Your Honors, we are looking at adding

11   additional defendants, the investors who may have had

12   knowledge as aiders and abetters.  So currently, there are

13   seven defendants.  There may be more.  There will be some

14   defendants that will be represented by counsel.

15      JUDGE PROCTOR:  Let me ask you this.  If any of

16   these defendants trickle through default by appearing and

17   defending, why wouldn't you just be able to informally

18   coordinate among the various actions rather than have us

19   centralize them?  You're dealing with a limited number of

20   defendants and counsel then?

21      MS. RIVAS:  We have six sets of plaintiff's

22   counsel, and then we have -- currently, we will have two sets

23   once Mr. Atkins' attorney appears on behalf of him and then

24   the additional defendants.

25      JUDGE PROCTOR:  So why wouldn't you be able to

1  informally coordinate among yourselves?

2           MS. RIVAS:  Your Honor, that is --

3           JUDGE PROCTOR:  Has there been any attempt to do

4  that?

5           MS. RIVAS:  Your Honor, yes.  I did have phone

6  calls.  We discussed a Section 1404 transfer.  That was

7  declined.

8           In terms of informal discovery coordination, we

9  felt because of the potential for the additional multiple

10  defendants as well as the criminal proceedings that are

11  happening in the Southern District of New York, while we may

12  have to work together with the prosecutors there on evidence,

13  for example, the class list, that formal centralization would

14  be appropriate.

15           JUDGE KAPLAN:  Where are the organizer defendants

16  located?

17           MS. RIVAS:  They're all in New York, Your Honor.

18           JUDGE KAPLAN:  And the investors?

19           MS. RIVAS:  They're -- my understanding is that

20  they're in New York.

21           JUDGE KAPLAN:  So as a practical matter, if we

22  don't centralize and there are default judgments entered in

23  Florida, wherever, the proceedings to enforce the judgment

24  are gonna happen in New York under New York State law; right?

25           MS. RIVAS:  That's -- yes, that sounds right,

1    Your Honor.

2            JUDGE KAPLAN:  And you've got the bankruptcy in

3    New York.

4            MS. RIVAS:  Correct.

5            JUDGE BREYER:  And the insurance.  To the extent

6    that any individual investors have insurance or anybody has

7    insurance in this matter which I think is what you're looking

8    at in terms of recovery.  Do you have any sense of where the

9    insurance is for these people?

10           MS. RIVAS:  That's something we are -- we would

11   like to find out, Your Honor.

12           JUDGE BREYER:  But if the investors are in New

13   York, the actors are in New York, that's one possible

14   location.

15           MS. RIVAS:  Correct, Your Honor.

16           JUDGE BREYER:  Okay.  Thank you.

17           JUDGE VANCE:  All right.  Thank you, ma'am.

18           MS. RIVAS:  Thank you.

19           JUDGE VANCE:  Next up, Mr. Grous.

20           MR. GROUS:  Good morning.

21           Very briefly, Your Honors, I just want to touch on

22   one development that has happened in the Fyre litigation.  On

23   July 7th, 2017, one of the defendants in the case, Fyre

24   Festival, LLC, had an involuntary Chapter 7 bankruptcy

25   proceeding filed against them.  That is currently pending in

1   the Southern District of New York in the bankruptcy courts.

2          While this affects two of the cases, the real case

3   in Florida and my case in the District of New Jersey, the

4   action that we have against Fyre Festival, LLC, that

5   particular defendant will be stayed; however, we do not

6   believe -- plaintiffs do not believe that that will have any

7   effect moving forward against the other --

8          JUDGE VANCE:  Have you defaulted the other Fyre

9   defendants?

10          MR. GROUS:  We have not.  We're in the -- we --

11   actually, plaintiff's counsel wanted to see what the result

12   of the MDL panel was before we started those proceedings.

13          Also, we have had contact with Mr. Atkins'

14   attorney, Stacy Richman, and we have granted her an extension

15   of time in order to have her defendant in the case to answer.

16          JUDGE HUVELLE:  And where is Mr. Atkins located,

17   also in New York?

18          MR. GROUS:  Mr. Atkins is actually a resident of

19   New Jersey.

20          JUDGE HUVELLE:  Yeah.  If someone were to ask a

21   1404 transfer, what is your objection since you have two of

22   the cases outside of New York?

23          MR. GROUS:  Sure.  My -- we support the MDL

24   transfer to the Southern District of New York.  In the

25   alternative, we do feel that -- plaintiffs do feel that the

1    District of New Jersey is an appropriate place in its

2    proximity to the evidence which is located in New York.  At

3    least one of the actors involved in this case, Mr. Atkins,

4    is located in --

5               JUDGE BREYER:  Right.  But absent the MDL, the

6    question is are you willing to coordinate, informally

7    coordinate or agree to a transfer?

8               MR. GROUS:  That's something that I would obviously

9    keep in mind, that plaintiffs would obviously keep in mind.

10              JUDGE BREYER:  I mean, you're got some asset out

11   there that you're all trying to reach or a group of assets.

12   I just think that logically, you would try to minimize the

13   costs of this whole process.  People --

14              MR. GROUS:  Absolutely.

15              JUDGE BREYER:  -- spend enough money.

16              MR. GROUS:  Absolutely.

17              JUDGE BREYER:  Okay.  Thank you.

18              JUDGE VANCE:  All right.  Thank you, Tom.

19              MR. GROUS:  Thank you.

20              JUDGE VANCE:  Mr. Levy.

21              MR. LEVY:  Good morning, Your Honors.

22              Chad Levy on behalf of the Reel plaintiffs filed

23   their suit in the Southern District of Florida.

24              A couple points just to note.  We do have defaults

25   against Fyre Media, Inc., Fyre Festival, LLC and Mr. Atkins.

1   We have not heard from Mr. Atkins' attorney as of yet so I do

2   not know if he will be appearing or not.

3           We do not oppose the consolidation of the claims;

4   however, if they are, we asked that they be transferred to

5   the Southern District of Florida because that is where

6   everything really happened in this case.  Miami was the hub

7   between all the festival goers.

8           JUDGE BREYER:  But wait, I'm sorry.  Really and

9   truly, it didn't look to me like -- I mean, everybody ended

10  up in Florida, but it didn't look like everything happened in

11  Florida.

12          MR. LEVY:  No.  Everything happened in the Bahamas.

13          JUDGE BREYER:  Well, I think the argument is that

14  nothing happened in the Bahamas.  And if there's some way we

15  can transfer there, I'm willing to sit but . . .

16          JUDGE VANCE:  You don't want to sit there.

17          MR. LEVY:  That is true.

18          JUDGE KAPLAN:  And we have Fire Island in New York

19  too, you know?

20          MR. LEVY:  All right.  We believe that --

21          JUDGE HUVELLE:  In all seriousness, isn't the

22  Miami -- the only reason you're claiming Miami is people were

23  in transit.  I mean, they happened to be in the airport when

24  there was no place for them to go.

25          MR. LEVY:  We believe that that is aspect of the

1    plaintiffs in this case.  They potentially all were stuck in

2    Florida.

3                 JUDGE HUVELLE:  But that's, I mean --

4                 MR. LEVY:  But also, we --

5                 JUDGE HUVELLE:  There's no particular decision

6    making that went on or representations.  They happened to be

7    in the airport.  But what's your objection to being in New

8    York?  Why won't you agree to a 1404?

9                 MR. LEVY:  Well, it's not that we necessarily

10   object to it.  We think that Miami is a more proper place

11   because the defense in this case, this is not a company where

12   there's a lot of documentation, and there's, I think, a few

13   employees only in the company itself.  Everything was done --

14                JUDGE VANCE:  They're not in Florida, are they?

15                MR. LEVY:  No, none of the defendants are in

16   Florida.  They do --

17                JUDGE VANCE:  But the question's why wouldn't you

18   agree to a Rule 1404 transfer to New York?  Get the cases in

19   New York for all purposes, save everybody a lot of money

20   because you're going after limited assets.

21                MR. LEVY:  The question is I don't know yet.  Your

22   Honors, it's too early to tell if there's gonna be actual

23   defendants defending this case, Your Honors, and if there's

24   gonna be discovery.  I think a lot of it's gonna take place

25   in the Bahamas.  I think there's gonna have to be a lot of --

1          JUDGE VANCE:  But you're talking about that

2    everybody knew that this stuff, these plans were not ready

3    for prime time, but you don't need to go to the Bahamas to

4    figure that out, do you?

5          MR. LEVY:  Well, we think there's a number of

6    people who in the Bahamas were also duped so to speak into

7    proceeding forward with this continuing forward with the

8    process.

9          JUDGE BREYER:  And are they plaintiffs?

10          MR. LEVY:  No, these are -- these are witnesses.

11    These are employees and vendors, and the Bohemian government

12    is even involved so there's -- I think there's gonna be a lot

13    of --

14          JUDGE KAPLAN:  The Bohemian government in Miami, is

15    it?

16          MR. LEVY:  Uh --

17          JUDGE KAPLAN:  Is it a government in exile?

18          You got people in Florida who presumably were told

19    by the promoters we're gonna have this great thing in the

20    Bahamas, and we want you to supply widgets.  And so some of

21    these supplied widgets, and some of them didn't, and I guess

22    pretty much of all of them got stiffed.  That's not exactly

23    complicated; right.

24          MR. LEVY:  No, I don't think it's complicated.  I

25    think it just goes to where there's gonna be discovery

```
 1   potentially in this case --

 2            JUDGE PROCTOR:  Well, you can't -- we can't

 3   transfer to the Bahamas.  I volunteered to take it.

 4            MR. LEVY:  I understand.

 5            JUDGE PROCTOR:  So no matter where this ends up,

 6   spread out in New York, in Miami, you're gonna have to go to

 7   the Bahamas to do any discovery you're contemplating that

 8   will not take place in the home court or the transferee

 9   court; correct?

10            MR. LEVY:  That is correct.

11            JUDGE PROCTOR:  So that's not an issue for

12   centralization, is it?

13            MR. LEVY:  No.  It's more just for what I think

14   would be the convenience of the litigation, not having --

15   incurring more costs and having New York fly down to the

16   Bahamas, I think we would be attempting to coordinate that

17   where we can conduct --

18            JUDGE HUVELLE:  Where do most of the plaintiffs

19   reside?  Do you know?

20            MR. LEVY:  Everywhere.  They're other countries,

21   other states, but we know every single one of them had agreed

22   to come to Miami for this Fyre Festival.

23            JUDGE HUVELLE:  Well, they gave them plane fare or

24   they had to give them transport to get, I mean --

25            MR. LEVY:  No, not through Miami.  Miami, and they
```

1    had to make their own arrangements.  That was on their

2    website.  Their only requirement was to get to Miami.

3              JUDGE HUVELLE:  You can get to the Bahamas that

4    way.

5              MR. LEVY:  That's correct.

6              JUDGE HUVELLE:  Were there a majority in one place

7    or another or you have no idea?

8              MR. LEVY:  I don't think there's any way to make

9    that decision.

10             JUDGE VANCE:  If we don't centralize this, aren't

11   you gonna coordinate with the other plaintiffs?

12             MR. LEVY:  We will certainly attempt to do that.

13   That's not our position that we're not going to, but if it's

14   going to be consolidated, our position is we think it should

15   be in Miami.

16             JUDGE VANCE:  Okay.  Thank you.

17             Mr. Meiselas?

18             MR. MEISELAS:  Good morning, Your Honors.  Ben

19   M-e-i-s-e-l-a-s Geragos and Geragos on behalf of the Jung

20   plaintiffs.

21             Your Honors talked about the default.  I think you

22   follow the default to its logical conclusion.  Everybody here

23   will end up with cheese sandwiches because I don't think you

24   have real assets there.

25             The issue here and the key thing are the Doe

1    investors which hasn't been discussed yet which is gonna be

2    part of the investigation.  These are institutional investors

3    who have lent significant amounts of money who were aware,

4    and we've identified them as Does.  They're potentially all

5    over the country right now.  What we cited in our brief --

6            JUDGE KAPLAN:  How do you know they're

7    institutional investors?

8            MR. MEISELAS:  As part of our investigation.  First

9    off, it's been widely reported in various periodicals who

10   they are.  Responsibly --

11           JUDGE KAPLAN:  Then why are you calling them Doe

12   investors?

13           MR. MEISELAS:  At the pleading stage, we want to

14   give them --

15           JUDGE BREYER:  How many investors are we talking

16   about?

17           MR. MEISELAS:  About five.

18           JUDGE BREYER:  Pardon?

19           MR. MEISELAS:  Five.

20           JUDGE BREYER:  Five.  Okay, five people.  Five

21   investors and five entities.  Where are the five located?

22           MR. MEISELAS:  As of right now, we believe they're

23   on the east coast.

24           JUDGE BREYER:  Why should this possibly -- I mean,

25   I love California, but why should this possibly be in

1  California of all the places?

2          MR. MEISELAS:  Well --

3          JUDGE BREYER:  Just other than you're here, and

4  well, that's nice, but, you know, you can't totally

5  capitalize on that, and you say there's a lot of plaintiffs

6  here.

7          MR. MEISELAS:  I would say the lion's share of

8  plaintiffs are here.

9          JUDGE BREYER:  Okay.  But they didn't make the

10  false -- they're the purported victims of this.  So why

11  would -- why would we coordinate it in L.A.?

12          MR. MEISELAS:  I guess giving any benefit of the

13  doubt to the defendants that they deserve some convenience in

14  New York when they ship people off to a foreign island --

15          JUDGE VANCE:  So you're picking someplace that's

16  inconvenient to them?  That's not what we're here for.

17          Let me ask you this.  I don't understand how an

18  investor -- not only an investor invests in something that

19  they knew was not ready for prime time?  I mean, doesn't that

20  suggest that they're not gonna get any money back out of this

21  investment?  I don't understand how they're going to be

22  defendants.

23          MR. MEISELAS:  The standard is know or should have

24  known, and we believe that they were reckless, and they were

25  in there.  They saw what happening, and they let the people

1   go to New York.

2          I just want to say this, though.  We've talked

3   about were we willing to do a 1404, and yes, we are.  We are

4   willing to discuss.  We are -- it was just --

5          JUDGE BREYER:  Okay.  So if it goes to New York or

6   goes to Miami, you're willing to do the 1404.

7          MR. MEISELAS:  We're having a discussion right now.

8          JUDGE BREYER:  All right.

9          MR. MEISELAS:  It's a fluid conversation with the

10  Doe investors.

11         JUDGE VANCE:  All right.  Thank you, sir.

12             (Argument concluded at 10:37 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                         <u>CERTIFICATE OF REPORTER</u>

3

4    COUNTY OF LOS ANGELES        )

5                                 )  SS.

6    STATE OF CALIFORNIA          )

7

8    I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED

9    STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

10   DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE

11   FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET

12   FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN

13   FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO

14   FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION

15   OF MY STENOGRAPHIC NOTES.

16

17

18   DATE:  <u>AUGUST 10, 2017_____</u>

19

20   <u>____/s/  LAURA MILLER ELIAS____</u>

21   LAURA MILLER ELIAS, CSR 10019

22   FEDERAL OFFICIAL COURT REPORTER

23

24

25